**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**PAUL SARKADI,**

                Plaintiff,

    **v.**

**OHIO CASINO CONTROL**
**COMMISSION, *et al.,***

              Defendants.

**Case No. 2:20-cv-1316**

**Judge James L. Graham**

**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 24), along with Defendants Hollywood Casino Company and Penn National Gaming, Inc.'s Motions to Dismiss Plaintiff's Complaint (ECF Nos. 11 and 12) and the Motion of Defendants, Ohio Casino Control Commission, Joshua Welty,[1] Thomas Kincaid, and Does 7, 8, 9, & 10 to Dismiss (ECF No. 14).  For the reasons that follow, the Court **GRANTS** Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 24), but only as specified further below, **GRANTS IN PART and DENIES IN PART** the Motion of Defendants, Ohio Casino Control Commission, Joshua Welty, Thomas Kincaid, and Does 7, 8, 9, & 10 to Dismiss (ECF No. 14), and **GRANTS** Defendants Hollywood Casino Company and Penn National Gaming, Inc.'s Motions to Dismiss Plaintiff's Complaint (ECF Nos. 11 and 12).

## I. BACKGROUND

The following facts are as alleged by Plaintiff Paul Sarkadi in both his original and proposed amended Complaint:

---

[1] Plaintiff brings claims against Joshua Welby, but Defendants reference him as Joshua Welty.

Plaintiff, an advantage gambler,[2] asserts seven causes of action against numerous defendants concerning his March 16, 2019 visit to Defendant Hollywood Casino Company ("Hollywood Casino")[3] in Columbus, Ohio. While playing slots at Hollywood Casino, Plaintiff alleges he was approached by Defendant Doe 1[4] and other individual Defendants and instructed to step away from his game. (Compl. § 14.) Plaintiff claims he stated that "he desired to leave immediately" and insisted "upon being allowed to go on his way." (*Id.* at ¶ 15.) Plaintiff further claims that he was told that "he must accompany the Defendants," to which he again stated that he "desired to leave." (*Id.* at ¶ 16.)

At that point, Plaintiff claims Defendant Doe 7[5] told him that he must either accompany Defendants or be taken to jail, and that Doe 7 forcefully grabbed him by the arm above the elbow. (*Id.* at ¶¶ 17, 33.) Plaintiff next alleges that he was taken to a "secured room where he was held against his will" and forced to hand over his driver's license, so that Hollywood Casino personnel could enter his private information into "a database of perceived undesirables" for the purpose of "persecut[ing] the Plaintiff as an advantage gambler." (*Id.* at ¶¶ 23, 25.) Plaintiff claims that Defendants Kincaid, Welty, and Does 7-10 used their authority as OCCC agents, "acting in concert

---

[2] According to Plaintiff, this is a term of art used in the casino industry to denote a player "who generally wins at casinos through applying legal strategies to the games offered by a casino." (Compl. ¶ 7, ECF No. 1 at 3.)

[3] In its response in opposition to Plaintiff's motion, Defendant Hollywood clarifies that:

> Plaintiff continues to name the incorrect Casino defendants. 'Hollywood Casino Company' does not exist as an entity, and PNG is not the entity responsible for the casino at issue. Rather, the proper entity that should have been named by Plaintiff is Central Ohio Gaming Ventures, LLC d/b/a Hollywood Casino Columbus. However, the Amended Complaint fails to rectify the pleading deficiencies addressed in the Casino's original Motion to Amend, and therefore his claims against the Casino— regardless of name—are insufficient. If this Court permits Plaintiff to file the Amended Complaint, the Casino reserves the right to address the issue of naming the proper Casino defendant at that time (ECF No. 29 at 216, n.1.)

[4] Plaintiff's Errata/Supplement to Proposed Amended Complaint, Doc. 24-1 (ECF No. 33) now identifies Doe 1 as David Bailey, a Hollywood Casino employee, "working as a security supervisor, security director, or security manager." (ECF No. 33-1 at 256.)

[5] Plaintiff's Errata/Supplement to Proposed Amended Complaint, Doc. 24-1 (ECF No. 33) now identifies Doe 7 as Gary Browder, an Ohio Casino Control Commission ("OCCC") employee, "working as an enforcement officer or supervisor and interacting with Plaintiff on March 16, 2019." (*Id.*)

with the other Defendants" to compel production of his identification. (*Id.* at ¶ 44.) Plaintiff further claims that he was later allowed to redeem his slot cash-out tickets and escorted off the premises. (*Id.* at ¶ 24.)

Plaintiff asserts seven causes of action against the various Defendants for: 1) violation of 42 U.S.C. § 1983 (search and seizure); 2) violation of 42 U.S.C. § 1983 (violation of due process in the form of a taking or continuing seizure of property and violation of Plaintiff's rights to anonymity and right to remain silent); 3) battery; 4) false imprisonment; 5) defamation; 6) trespass to chattels;[6] and 7) negligence.[7]

The four pending motions before this Court are fully briefed and ripe for adjudication.

## II. STANDARDS OF REVIEW

Defendants Ohio Casino Control Commission ("OCCC"), Joshua Welty, Thomas Kincaid, and Does 7-10 (collectively, the "State Defendants") move to dismiss Plaintiff's claims, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction. The State Defendants do not contest the facts laid out in Plaintiff's Complaint, and therefore bring a facial attack. *See DLX, Inc. v. Kentucky,* 381 F.3d 511 (6th Cir. 2004). When reviewing a facial attack, courts take all of the allegations in the complaint as true. *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).

Defendants Hollywood Casino, Penn National Gaming, and Does 1-6 (collectively, the "Casino Defendants") move to dismiss Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[6] Plaintiff's Complaint is missing a sixth cause of action, and trespass to chattels is listed as the seventh cause of action. (ECF No. 1 at 22.)
[7] As Plaintiff's Complaint is missing a sixth cause of action, negligence is listed as the eighth cause of action. (*Id.*)

544, 570 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal,* 556 U.S. at 679; *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007); *Twombly,* 550 U.S. at 555–56. But courts "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby Cty.,* 220 F.3d 433, 446 (6th Cir. 2000).

## III.   DISCUSSION

Both the State and Casino Defendants argue that amending Plaintiff's Complaint would be futile, because Plaintiff's proposed amended Complaint fails to cure the pleading deficiencies the State and Casino Defendants identified in their motions to dismiss. The Court therefore need only address Plaintiff's motion to amend to resolve all pending motions and will address each of the State and Casino Defendants' arguments for dismissal and against amendment in turn.

### A.  Plaintiff's § 1983 Claims Against the State Defendants

The State Defendants move to dismiss this case, arguing that the Eleventh Amendment deprives this Court of jurisdiction. Plaintiff premises this Court's jurisdiction on the provisions of 42 U.S.C. § 1983, and as the party asserting jurisdiction, Plaintiff bears the burden of proof if jurisdiction is challenged. *Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n,* 287 F.3d 568, 573 (6th Cir.2002) ("Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.").

The Eleventh Amendment[8] provides immunity for states, arms of the state, and state employees in their official capacities from suits for money damages. *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). The State of Ohio has not waived its sovereign immunity, nor has it consented to civil rights suits in federal court. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).

In his response in opposition to the State Defendants' motion to dismiss, Plaintiff argues that under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)*,* the OCCC is a "municipality," and Eleventh Amendment immunity is therefore unavailable to it. (ECF No. 17 at 110.) In his proposed amended Complaint, Plaintiff also seeks to add that the OCCC's "formation, funding, and status renders it a municipality for purposes of 42 U.S.C. 1983." (ECF No. 24-1 at 177).

But in *Monell,* the Supreme Court considered the issue of whether local government entities are persons who can be sued under § 1983, not state agencies, and the Court finds that *Monell* is inapplicable to the issue of whether the OCCC is immune from suit under the Eleventh Amendment as an arm of the state.[9] Instead, this Court recognizes that in determining whether an entity is an arm of the state the following factors should be considered:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Johnson v. Ohio Dep't of Jobs & Family Servs.,* No. 3:12-cv-124, 2012 U.S. Dist. LEXIS 59012, at *4-5 (S.D. Ohio Apr. 27, 2012) (citing *Pucci v. Nineteenth Dist. Court,* 628 F.3d 752 (6th Cir. 2010)).

---

[8] The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

[9] "This Court's holding in *Monell* was 'limited to local government units which are not considered part of the State for Eleventh Amendment purposes.'" *Quern v. Jordan*, 440 U.S. 332, 338, 99 S. Ct. 1139, 1144 (1979) (quoting *Monell,* 436 U.S. at 690, n. 54).

The OCCC is a state agency created by Article XV, Section 6(C)(4) of the Ohio Constitution. Its members are "appointed by the governor with the advice and consent of the senate." *Id.* The OCCC is funded through a percentage of the tax on gross casino revenue. *Id.* at § 6(C)(3)(d). The "casino control commission fund" is created in the state treasury and overseen by two other state agencies, the Ohio Department of Taxation and the Office of Budget and Management. Ohio Rev. Code § 5753.03

Ohio Revised Code § 1.60 defines 'state agency' as "every organized body, office, or agency established by the laws of the state for the exercise of any function of state government." Ohio Revised Code § 121.41(D) further clarifies that "'State agency' has the same meaning as in section 1.60 of the Revised Code and includes the Ohio casino control commission."

These factors overwhelmingly support the conclusion that the OCCC is an arm of the State of Ohio and is therefore not independent of the Ohio state government and is not a local municipality.

As a state agency, the OCCC enjoys Ohio's sovereign immunity in federal court. As such, the OCCC is immune against Plaintiff's § 1983 claim against it for monetary damages in federal court, and Plaintiff's claims against it are dismissed for lack of subject-matter jurisdiction. Likewise, claims against state officers in their official capacity are "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's claims against Defendants Joshua Welty, Thomas Kincaid, and Does 7-10 in their official capacities are also dismissed for lack of subject-matter jurisdiction.

### B. Plaintiff's Individual Capacity Claims

The State Defendants also submit that Plaintiff's Complaint does not suggest that the OCCC's agents, Joshua Welty, Thomas Kincaid, and Does 7-10, acted outside of their official capacities and are therefore not sued in their individual capacities. (ECF No. 14 at 84.)

Thereafter, Plaintiff filed a Motion for Leave to File First Amended Complaint (ECF No. 24), where in his proposed amended Complaint, he specifically alleges that Defendants Joshua Welty and Thomas Kincaid "are sued here in their individual capacities." (Am. Compl. ¶ 12, ECF No. 24-1 at 180.)

The State Defendants argue that because the Court lacked jurisdiction at the outset of this case, it cannot reach the question of whether to grant Plaintiff leave to amend his complaint. Plaintiff counters that he is permitted to amend his complaint under 28 U.S.C. § 1653, as the statute provides that "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The Sixth Circuit recognizes that "if jurisdiction actually existed from the facts at the time when the complaint was filed, even though not properly pleaded," a court is not deprived of jurisdiction if the pleading deficiency is later corrected. *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952). Here, if Plaintiff is alleging that certain OCCC agents were acting in their individual capacities from the facts alleged in his Complaint, then jurisdiction exists. As such, Plaintiff may be permitted to correct his pleading deficiency, and the Court will therefore consider Plaintiff's motion for leave to amend.

The State Defendants respond that even if the Court grants Plaintiff's motion for leave to amend, amendment would nonetheless be futile, because this Court lacks subject-matter jurisdiction over the OCCC and its employees.

"A court need not grant leave to amend . . . where amendment would be 'futile.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id.* (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

The State Defendants first argue that granting Plaintiff leave to amend would be futile, because Plaintiff's proposed amended Complaint, now alleges that the OCCC's "formation, funding, and status renders it a municipality for purposes of 42 U.S.C. 1983" (ECF No. 24-1 at 177), and this language cannot cure the Court's lack of jurisdiction over the OCCC. The Court agrees with the State Defendants that it would be futile for Plaintiff to name the OCCC as a municipality in his proposed amended Complaint, as this Court has already determined it is not a municipality, and that it lacks subject-matter jurisdiction over the OCCC.

The State Defendants next argue that Plaintiff's proposed amended Complaint's new allegation that Defendants Welty and Kincaid "are sued here in their individual capacities" fails to provide sufficient notice that his action is against Welty and Kincaid in their individual capacities under this circuit's "course of proceedings" test.

The Sixth Circuit requires "plaintiffs seeking damages under § 1983 to set forth clearly in their pleading that they were suing state officials as individuals, rather than as officials." *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (en banc) (citing *Wells v. Brown,* 891 F.2d 591, 592 (6th Cir. 1989). The Sixth Circuit uses a "course of proceedings" test and "considers such factors as the nature of the plaintiff's claims, requests for compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims of qualified

immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." *Id.* at 772, n.1. (citing *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

Though Plaintiff's original Complaint sought compensatory and punitive damages, the Sixth Circuit has determined that this factor alone is insufficient "to place a state official on notice that he is being sued in his individual capacity." *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002). Instead, Plaintiff's subsequent proposed pleading puts Welty and Kincaid on notice that they are being sued in their individual capacities, as Plaintiff's proposed amended Complaint clearly states that Plaintiff is suing them in their individual capacities by asserting, "Kincaid and Welby . . . are sued here in their individual capacities." (ECF No. 24-1 at 180.) *Id.* at 966 (citing *Moore,* 272 F.3d at 772 n.1) ("We also consider whether subsequent pleadings put the defendant on notice of the capacity in which he or she is being sued.").

Thus, granting Plaintiff's proposed amended Complaint would not be futile as it pertains to Welty and Kincaid, as the amended language regarding suit against Welty and Kincaid in their individual capacities clarifies any previous ambiguity concerning their capacity in his earlier pleading. Plaintiff is therefore permitted to amend his Complaint to properly plead capacity against Welty and Kincaid, whereas Plaintiff is not permitted to amend his Complaint concerning the OCCC or any of its employees in their official capacities, as the Court lacks subject-matter jurisdiction over them.

Consequently, the Court grants in part the State Defendants' motion to dismiss regarding Plaintiff's § 1983 claims against the OCCC and its agents, Welty, Kincaid, and Does 7–10, in their official capacities and denies in part the State Defendants' motion to dismiss regarding Plaintiff's claims against Welty and Kincaid in their individual capacities. *See Hafer v. Melo,* 502 U.S. 21 (1991*)* (determining that a state official may be sued in an individual capacity for damages).

9

### B. Plaintiff's § 1983 Claims Against the Casino Defendants

Plaintiff also brings § 1983 claims against the Casino Defendants. In their motions to dismiss, the Casino Defendants argue that Plaintiff fails to make valid § 1983 claims against them, because Plaintiff fails to plead sufficient facts that the Casino Defendants were operating under the color of state law.

To state a plausible § 1983 claim for relief, Plaintiff must allege facts demonstrating that "'1) [Plaintiff] was deprived of a right secured by the Constitution or laws of the United States and that 2) the deprivation was caused by someone acting under color of state law.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *Perry v. McGinnis,* 209 F.3d 597, 603 (6th Cir. 2000)). A private party "acts under the color of state law when its conduct is fairly attributable to the state." *Lindsey v. Detroit Entm't, Ltd. Liab. Co.*, 484 F.3d 824, 827 (6th Cir. 2007) (cleaned up).

The Sixth Circuit recognizes three tests for determining whether state action exists: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003).

Plaintiff argues that the third test applies in this case. (ECF No. 16 at 97.)

"Under the symbiotic or nexus test, a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Id.* at 834. "The nexus can be established with evidence of a customary or preexisting arrangement between the government and the private actor." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). This is a fact-specific inquiry and determined on a case-by-case basis. *Chapman,* 319 F.3d at 834. "Although this test requires a fact-specific analysis, the Sixth Circuit has made clear that the ties between the private party and the State must be substantial." *Jackim v. City of Brooklyn,* No. 1:05 cv 1678,

2007 U.S. Dist. LEXIS 20355, at *85 (N.D. Ohio Mar. 22, 2007) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).

### 1.    Plaintiff's Claims Against the Casino Employees

In the instant case, Plaintiff has not only failed to allege sufficient facts that Does 1-6 (collectively, "the Casino employees") were state actors under the symbiotic relationship or nexus test, but he has also failed to meet the pleading standards set forth in *Twombly* and *Iqbal*.

Throughout both the original and proposed amended Complaint, Plaintiff puts forth several vague allegations against "the Defendants," or "the individual defendants," or even "[e]ach of the Defendants" where they were "acting in concert" or taking generalized "actions" against him. Plaintiff's use of "Defendants" collectively without specifying which Defendant committed what unconstitutional act fails to not only state a plausible § 1983 claim but also fails to meet federal pleading standards.  *See In re Travel Agent Commn. Antitrust Litig.,* 583 F.3d 896, 905 (6th Cir. 2009) (finding Plaintiffs' attempt to implicate multiple defendants "by relying on several vague allegations contained in the Amended Complaint that refer to 'defendants' [and] plaintiffs' reliance on these indeterminate assertions" to be "rejected by the Supreme Court in *Twombly*"); *see also Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008) (determining that the "complaint's use of either the collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom [makes it]  impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed"); *Brockman v. Chevron USA, Inc.,* 1:09-CV-656, 2010 WL 11538073, at *2 (S.D. Ohio Aug. 11, 2010) (concluding that "the complaint in this case fails to meet the pleading standards set forth in *Twombly* and *Iqbal* [by] simply refer[ring] [to] "Defendants" collectively without specifying or identifying each Defendant's alleged misconduct").

11

Even if Plaintiff had specified or identified each Defendant's alleged misconduct, he still fails to allege facts to support a plausible close nexus between the Casino employees and OCCC agents. Merely pleading that Defendants were collectively "acting in concert" fails to establish a substantial tie between the Casino employees and state actors. Plaintiff argues that he has shown that the Casino acted "as a willful participant in joint activity with the State or its agents" by pleading that a Casino employee approached Plaintiff [and] instructed him to step away from the game at which he was playing" (Compl. ¶ 14), was told by an unidentified speaker that "he must accompany the Defendants," (*Id.* at ¶ 16), that an OCCC agent told him that "he must either accompany the Defendants or be taken to jail," (*Id.* at ¶ 17) and "fearing the expressed force and violence threatened against him, thereafter complied with the directives of the individual Defendants," (*Id.* at ¶ 18) and "was then taken to a secured room where he was held against his will." (*Id.* at ¶ 19.) But Plaintiff's assertions fail to establish a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself.

The only allegation that specifically identifies any action by a Casino employee is Plaintiff's allegation that he was approached by a Casino employee who instructed to step away from his game. Though Plaintiff claims that OCCC agents were also present and allegedly issued additional unspecified directives, the Sixth Circuit has held that "utilization of public services by private actors does not convert private action to state action." *Lansing v. City of Memphis,* 202 F.3d 821, 831 (6th Cir. 2000). Moreover, Plaintiff's Complaint alleges that the collective Defendants explained to him "that he was taken to this secure room for committing trespassing upon Hollywood's property." (Compl. ¶ 20.) The Sixth Circuit has found that requesting assistance "from an available police officer cannot be sufficient to form a nexus between the state

and the private action." *Dressler v. Rice,* 739 F. App'x 814, 824 (6th Cir. 2018). "'If this were all that was required to find state action, then every private citizen who solicited the aid of the police in resolving disputes or in ejecting unwanted persons would be transformed into a state actor.'" *Id.* (quoting *Lansing,* 202 F.3d at 833).

As a result of Plaintiff's inability to meet the federal pleading standards set forth in *Twombly* and *Iqbal*, along with his failure to allege sufficient facts that the Casino employees were state actors under the symbiotic relationship or nexus test, his § 1983 claims against the Casino employees must also be dismissed. Additionally, Plaintiff is not granted leave to amend his Complaint concerning the Casino employees. The Court finds that amendment would be futile because Plaintiff's proposed amended Complaint would not survive a motion to dismiss, as it still fails to meet federal pleading standards or to properly allege that Casino employees were acting under color of state law.

### 2.  Plaintiff's Claims Against Hollywood Casino

The Casino Defendants also argue that Plaintiff's Complaint fails to plead sufficient facts to support a viable § 1983 claim against the Casino.

Section 1983 liability cannot be imposed on a private corporation under a theory of respondeat superior. *Street v. Corrections Corp. of Am.,* 102 F.3d 810, 818 (6th Cir. 1996) (discussing the holding in *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978) and its application to private corporations). Therefore, "[a] plaintiff may hold an entity only directly liable for unconstitutional or illegal policies, not for the unconstitutional conduct of the entity's employees." *Hasan v. Tower City Ave., L.L.C.,* 1:07CV1717, 2008 WL 11506265, at *8 (N.D. Ohio June 5, 2008) (collecting cases). Here, Plaintiff has not alleged that the Casino had a policy, custom, or practice that was the moving force behind Plaintiff's alleged constitutional harm. Rather, Plaintiff

argues that he "pleads an illegal industry standard" and that "[a] pattern and practice is pled. And this pattern and practice of seizing advantage gamblers (industry standard) is also evident." (ECF No. 16 at 101.)

This is insufficient. Though Plaintiff's Complaint contains allegations concerning OCCC's "policies and practices" regarding his seizure and "the policies and procedures of the OCCC" (Compl. ¶¶ 56, 58), it fails to allege that the Casino had a custom, policy, or practice that caused the alleged violation of his constitutional rights. Accordingly, the Court dismisses his § 1983 claims against the Casino for failure to state claims upon which relief can be granted.

### C. Plaintiff's State Law Claims

Plaintiff also brings state law claims for battery, false imprisonment, defamation, trespass to chattels, and negligence.

#### 1. State Law Claims Against Welty and Kincaid

To the extent that Plaintiff is bringing state law claims against Defendants Welty and Kincaid in their individual capacities, his claims fail, as this Court lacks jurisdiction to hear such claims. [10] Ohio Revised Code § 2743.02(F) mandates that lawsuits seeking damages against state employees "shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86." Thus, "Ohio law requires that, as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Revised Code section 9.86." *Otte v. Kasich (In re Ohio Execution Protocol Litig.)*, 709 F. App'x 779, 784 (6th Cir. 2017) (quoting *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989)); *see also McCormick*, 693

---

[10] Even if Plaintiff had also brought state law claims against Does 7–10 in their individual capacities, these claims would fail for the same reasons Plaintiff's state law claims against Welty and Kincaid fail.

F.3d at 665. Here, Plaintiff has not first filed his state law causes of actions against Welty and Kincaid in the Ohio Court of Claims. This procedural misstep therefore bars Plaintiff's state law claims against Welty and Kincaid in their individual capacities.

### 2. State Law Claims Against the Casino Defendants

Plaintiff's remaining state law claims are against the Casino Defendants.

#### a) Battery

"[T]o adequately plead a claim of battery under Ohio law, a plaintiff must allege an intentional harmful or offensive touching." *Hayward v. Cleveland Clinic Found.,* 878 F. Supp. 2d 860, 864 (N.D. Ohio 2012) (citing *Northern v. Med. Mut. of Ohio*, 2006-Ohio-1075 (Ohio Ct. App.)). Here, the only harmful and offensive touching claimed by Plaintiff was by Doe 7, an OCCC employee. (Compl. ¶¶ 70–75.) As battery requires a touching, and Plaintiff does not allege that any Casino employees touched him, his battery claim against the Casino Defendants fails and must be dismissed.

#### b) False Imprisonment

In Ohio, the tort of false imprisonment requires: "(1) an intentional detention (2) taking place in a limited area (3) for any appreciable time, 'however short' (4) without a lawful privilege and (5) without the detainee's consent." *Saucedo-Carrillo v. United States,* 983 F. Supp. 2d 917, 922 (N.D. Ohio 2013) (collecting cases). Additionally, "submission to the mere verbal direction of another, unaccompanied by force or threats of any character, cannot constitute false imprisonment." *Id.* at 923 (collecting cases). In the case at bar, Plaintiff "complied with the directive of the individual Defendants" (Compl. ¶ 18) and alleges that the "show of force" was by Doe 7, an OCCC employee and the "police Defendants." (*Id.* at ¶ 17.) None of these Defendants

are Casino Defendants.  Plaintiff has therefore failed to allege a viable claim of false imprisonment against any of the Casino Defendants, and his false imprisonment claim must also be dismissed.

### c)  Defamation

A cause of action for defamation requires: (1) a false and defamatory statement; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of the defendant; and (5) the statement was defamatory per se or caused special harm to the plaintiff.  *Casale v. Nationwide Children's Hosp.*, No. 2:11-cv-1124, 2015 U.S. Dist. LEXIS 190751, at *22 (S.D. Ohio Sep. 25, 2015) (citing *Gosden v. Louis*, 116 Ohio App. 3d 195, 206, 687 N.E.2d 481 (Ohio Ct. App. 9th Dist. 1996)).

Here, Plaintiff claims that he was taken into custody in a public place, where members of the public viewed these actions; that the brandishing of Doe 7's badge and "the actions of the Defendants" communicated to all present that he was a criminal; and that the verbal promise of jail communicated the same message. (Compl. ¶¶ 83–87.)   Again, Plaintiff's Complaint focuses on Doe 7, who is not a Casino employee and generically references "Defendants."  Not only does Plaintiff's Complaint fail to make a defamation claim against the Casino Defendants, but defamation requires a statement, and none of the alleged conduct sustains such a claim.[11]  Therefore, Plaintiff's defamation claim is also dismissed.

### d)  Trespass to Chattels

> [T]o plead a claim for trespass to chattels in Ohio, a plaintiff must allege that the defendant intentionally used or intermeddled with a chattel in possession of another such that he or she (1) dispossessed the other of the chattel, or (2) the chattel is impaired as to its condition, quality, or value, or (3) the possessor is deprived of the use of the chattel for a substantial time, or (4) bodily harm is caused to the possessor, or harm is caused to some person or thing  in which the possessor has a legally protected interest.

---

[11] Though Plaintiff argues that being marched through the casino is enough to state a viable defamation claim, our sister court has determined that being marched through a public area in handcuffs and "exposed to the public as a criminal" is not enough to sustain a defamation claim.  *Hasan,* 2008 WL 11506265, at *11.

*Freedom Banc Mortg. Servs. v. O'Harra,* No. 2:11-cv-01073, 2012 U.S. Dist. LEXIS 125734, at *25-26 (S.D. Ohio Sep. 5, 2012) (cleaned up).

Here, Plaintiff alleges that the seizure of his identification and player's card constitutes trespass to chattels. (Compl. ¶ 90.)  Once again, Plaintiff generically attributes his cause of action to "[t]he actions of the Defendants, individually, in concert, and in conspiracy" (*Id.*) without specifying who caused what alleged harm.  Moreover, he fails to allege anything other than being dispossessed of his identification and player's card, and therefore only pleads the first element of a trespass to chattels claim.  Consequently, he fails to allege a viable trespass to chattels claim against any of the Casino Defendants, and this claim also warrants dismissal for failure to state a claim upon which relief can be granted.

### e)  Negligence

Lastly, Plaintiff also asserts a negligence claim against Defendants.  "A claim of negligence requires the plaintiff to show the existence of a duty, a breach of that duty, and an injury resulting proximately from the breach."  *Williams v. AVI Food Sys.,* 2020-Ohio-5001, ¶ 15 (Ohio Ct. App.) (citing *Menifee v. Ohio Welding Prods., Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984)).

Here, Plaintiff alleges in both his original and proposed amended Complaint that "Defendants owed a duty of care to the Plaintiff to avoid injuring Plaintiff and . . . to assure an environment of safety and security to Plaintiff while on the premises." (Compl. ¶ 93.)  Plaintiff also claims that "[e]ach of the Defendants owed a duty to Plaintiff to avoid injuring Plaintiff," (*Id.* at ¶ 94) and that their actions "violated various criminal statutes proscribing their actions and enacted to protect classes of persons inclusive of the Plaintiff," (*Id.* at ¶ 95) and finally, that "[e]ach of the Defendants failed to act as a reasonable person . . . and as a result of this failure, Plaintiff was injured." (*Id.* at ¶ 96.)

Plaintiff's Complaint fails to allege that any of the Casino Defendants owed him a duty of care, that their actions breached that duty of care, or that their breach proximately caused his injuries. Rather, he once again makes a claim against the collective Defendants in this case and how their collective actions and failure to "act as a reasonable person" injured him. As such, he fails to plead a viable negligence claim against any of the Casino Defendants, and his negligence claim against them must also be dismissed. *See* Brockman, 2010 WL 11538073, at *2 (finding that dismissal of a negligence claim was warranted, because "Throughout the complaint . . . Plaintiffs only allege in a collective manner that "Defendants" are responsible for their injuries.")

Moreover, though Plaintiff's Complaint does not directly allege that the Casino is vicariously liable for any torts allegedly committed by its employees, he does allege that all of the "individual Defendants" were "working within the scope of their employment" and "in the employ of Hollywood or OCCC" and "acting within the course and scope of their employment with their respective employers at the time of events." (Compl. ¶¶ 10, 40.) But here, "[s]ince plaintiff failed to state any claim upon which relief may be granted against any of the individual defendants," he also has no claim for vicarious liability against their employer. *Krause v. Case W. Reserve U.*, 70712, 1996 WL 732537, at *12 (Ohio App. 8th Dist. Dec. 19, 1996). Therefore, because all of Plaintiff's state law claims against the Casino employees fail so too do any claims against the Casino for vicarious liability, and these claims are also dismissed.

Furthermore, Plaintiff is not permitted to amend his Complaint concerning any of his state law claims. This is because any state law pleading deficiencies also cannot be cured by his proposed amended Complaint, as they would not survive a motion to dismiss, and amendment would therefore be futile.

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 24) but only as it pertains to his individual capacity claims against Welty and Kincaid, **GRANTS IN PART and DENIES IN PART** the Motion of Defendants, Ohio Casino Control Commission, Joshua Welty, Thomas Kincaid, and Does 7, 8, 9, & 10 to Dismiss (ECF No. 14), and **GRANTS** (ECF Nos. 11 and 12).

The surviving claims are Plaintiff's § 1983 claims against Defendants Joshua Welty and Thomas Kincaid in their individual capacities.

Plaintiff is instructed to file his Amended Complaint within fourteen (14) days of the date of this Order.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 18, 2021